UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 09-20047-CIV-GOLD/TURNOFF

EL DORADO TOWERS
CONDOMINIUM ASSOCIATION, INC.,

        Petitioner,
v.

QBE INSURANCE CORPORATION,

        Respondent.
_____/

## DEFENDANT QBE INSURANCE CORPORATION'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT

The Defendant, QBE INSURANCE CORPORATION, hereby files this Reply to Plaintiff's Response to Motion for Summary Judgment, and states as follows:

In its Response to QBE's Motion for Summary Judgment (D.E.#58) and its Response to Statement of Material Facts (D.E.#57), Plaintiff makes the following arguments: (1) That four of its seven officers/directors were senior citizens who may not have understood their obligations under the insurance policy; (2) That the unit owners are only additional insureds with regard to fixtures, installations and/or additions in their units; (3) That its unit owner files were privileged and its failure to produce its October 20, 2005 meeting minutes was a mistake; and (4) That the policy does not require a proof of loss on a particular form and QBE has not proven prejudice from the untimely proof of loss. However, Plaintiff fails to establish a genuine issue of material fact by competent record evidence to defeat QBE's Motion for Summary Judgment.

## Summary Judgment Standard and Policy Construction

Citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Plaintiff states that the non-moving party must designate specific facts showing there is a genuine issue for trial. However, "statements made in briefs are not evidence of the facts asserted." See, e.g., Bell v. United Princeton Prop., Inc., 884 F.2d 713, 720 (3d Cir. 1989); Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993); Davis v. U.S., 2010 U.S. Dist. LEXIS 7036 (C.D. Cal. 2010); Richardson v. Honda, 635 F.Supp.2d 1261, 1276 (N.D. Ala.

2009). In order for Plaintiff to raise a factual issue in opposition to a motion for summary judgment, Plaintiff must present its facts by affidavit or other record evidence, not by unsupported statements in a Response brief. See Bell, 884 F.2d at 720; Pratt v. Floyd County Sherriff, 1999 U.S. Dist. LEXIS 21795 (S.D. Ind. 1999)(while discussion in briefs may be helpful, "it cannot serve as the basis for creating an issue of fact or substitute for evidence"); Patrick v. Wojdylo, 2008 U.S. Dist. LEXIS 10149 (S.D. Ind. 2008).

Citing Travelers Ins. Co. v. Bartozewicz, 404 So. 2d 1053 (Fla. 1981), Plaintiff also argues that public policy dictates that courts interpret insurance policies in a manner most favorable to the insured. However, Bartozewicz contains no such holding. The Florida Supreme Court in Bartozewicz stated that "ambiguities" or "equivocalities" in an insurance contract should be read against the insurer, and "equivocality arises only when the terms of a contract present a genuine inconsistency, uncertainty or ambiguity." Contrary to Plaintiff's suggestion, Florida law mandates that unambiguous insurance policy provisions must be construed as drafted, according to their "plain meaning," not interpreted in favor of coverage. To construe a policy provision in favor of coverage, "the provision must actually be ambiguous" and "courts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." James River Ins. Co. v. Ground Down Eng., Inc., 540 F.3d 1270 (11th Cir. Fla. 2008); See also Scottsdale Ins. Co. v. Cutz, 543 F.Supp.2d 1310 (S.D. Fla. 2008); Taurus Holdings v. USF&G, 913 So. 2d 528 (Fla. 2005); Deni Associates v. State Farm, 711 So. 2d 1135 (Fla. 1998); Eddy v. Vanguard, 2010 U.S. Dist. LEXIS 4904 (D. Me. 2010)("plaintiff's reliance on the principle that insurance policies are to be construed against their drafters is misplaced" as "such strict construction is appropriate only in cases in which the relevant policy language is ambiguous"). As Plaintiff has not demonstrated that QBE's policy provisions are ambiguous, the policy must be construed as written and cannot be interpreted in favor of the insured.

### Heightened Duty to Senior Citizens

Plaintiff states in its Response that four of the seven members of its Board of Directors and its Property Manager were senior citizens. Citing the adjuster code of ethics, Plaintiff alleges that QBE had a "heightened obligation to ensure the aged unit owners who might be additional insureds understood the Policy terms and provisions." However,

CASE NO.:  09-20047-CIV-GOLD/TURNOFF

Plaintiff misconstrues the adjuster code of ethics as subsection (h) of Rule 69B-220.201 imposes only a requirement of "extraordinary care when dealing with elderly ***clients***" *(emphasis added)*.  Subsection (b) defines "client" as "…any person who consults with or hires an adjuster to provide adjusting services."  The "client" of QBE's independent adjuster is QBE, not Plaintiff's unit owners.  Therefore, the Florida Administrative Code sections cited by Plaintiff impose no obligations on QBE's adjusters to "ensure the insured was apprised of the terms and conditions of the Policy."  Instead, Rule 69B-220.201 required Plaintiff's licensed public insurance adjuster, who was representing Plaintiff's interests within a few weeks after the hurricane, to ensure that his clients understood their policy obligations.

Further, aside from the ethical requirements of the Florida Administrative Code, Plaintiff's public adjuster received a license from the State of Florida that ensures that he possessed the qualifications to understand the terms and conditions of Plaintiff's policy of insurance.  Per Florida Statutes Section 626.865(1)(d), the Department of Financial Services issues a public insurance adjuster's license to applicants who establish that they are "sufficiently informed as to the terms and effects of the provisions of…insurance contracts, and possess adequate knowledge of the laws of this state relating to such contracts as to enable and qualify him or her to engage in the business of insurance adjuster fairly and without injury to the public or any member thereof with whom the applicant may have business as a public adjuster."  Therefore, while QBE was under no "heightened obligation" to elderly unit owners to "ensure the insured was apprised of the terms and conditions of the Policy," the Plaintiff was at all times represented by a licensed public adjuster who was familiar with the policy requirements as a condition of his license.  Plaintiff was also admittedly represented by attorneys at all material times.

Moreover, even if the cited section of the Florida Administrative Code did apply to QBE's adjusters in this context, the section merely states that the adjuster should assure that "elderly clients…are not disadvantaged in their claims transactions by failing memory or impaired cognitive processes," and Plaintiff does not establish that its Board members have failing memory or impaired cognitive processes.  Although Plaintiff filed an Affidavit from its President alleged to be one of the senior citizens on its Board of Directors, nowhere in that Affidavit does the President state that he has poor memory, impaired

cognitive process or did not understand the obligations under the insurance policy. Further, Plaintiff also alleges that it requested a certified copy of the insurance policy so that it could be aware of all of its duties under the policy.  However, nowhere in its Response or its Affidavit does Plaintiff establish that it did not have a copy of the insurance policy or coverage forms setting forth the policy conditions, or that its public insurance adjuster and attorneys did not have a copy or were not aware of these policy obligations. Accordingly, Plaintiff's suggestion that QBE failed to comply with Rule 69B-220.201(3)(h) is unfounded and does not create a material issue of fact precluding Summary Judgment.

### Examinations Under Oath and Additional Insureds

Plaintiff argues that it was not obligated to permit examinations under oath of any unit owners as the owners are "not additional insureds with respect to the building per se" and are not "full additional insureds" as they "could only be construed as additional insureds with respect to fixtures, installations and/or additions…"  According to Plaintiff, only those unit owners whose fixtures, installations or additions met the specific criteria for coverage could be considered additional insureds under the policy, and QBE allegedly failed to discern if the unit owners had units containing insured fixtures, installations and/or additions.  Plaintiff contends that whether the policy required unit owners to provide examinations under oath is a contested issue of material fact, and it is QBE's burden to prove the unit owners were "additional insureds" who willfully failed to comply.

However, QBE met its burden of proof as the Affidavit of Andrew Bertucci establishes that of the six additional witnesses requested to give examinations under oath, "five of these witnesses were additional insureds under the policy…"  *See Affidavit of Bertucci (D.E.#42-1), paragraph 34*.  Further, the examination under oath provision does not limit the scope of an examination of an additional insured solely to that additional insured's property.  Instead, the policy expressly states that QBE has the right to examine "any insured…about any matter relating to this insurance or the claim."  *See Affidavit of Bertucci (D.E.# 42-1), paragraph 44*.  Plaintiff fails to file any Affidavit in opposition stating that the five witnesses were not additional insureds under the policy.

Citing Florida Gaming Corp. v. Affiliated FM Ins. Co., 502 F.Supp.2d 1257 (S.D. Fla. 2007), Plaintiff argues that it was only obligated to produce a corporate officer for examination under oath, and that the corporate officer's lack of specific knowledge did not

disqualify him as the person with the most knowledge. Plaintiff argues that deferring to another person in an examination under oath does not mean that the insured failed to produce the person with the most knowledge. Plaintiff also argues that its obligation to produce "any insured" for examination under oath did not include the public adjuster.

However, Plaintiff misses the point. QBE does not contend that Plaintiff failed to produce a corporate representative with the most knowledge, and QBE does not seek Summary Judgment because Plaintiff failed to produce its public adjuster. Rather, QBE contends that Plaintiff delayed and refused to comply with its reasonable request for examinations under oath of additional insureds. Further, the Florida Gaming case relied upon by Plaintiff is distinguishable. While the Court in Florida Gaming held that the insurer could examine a designated corporate representative and did not require the insured corporation to produce its maintenance man or public adjuster, the insurance policy provision at issue in Florida Gaming only permitted examination of "the insured," which refers to the corporation, not "any insured" as set forth in the QBE policy. The Court in Florida Gaming refused to find that the policy provision allowing examination of "the insured" also included the insured's employees and agents, and the Court expressly distinguished policy language in other policies permitting examination of employees or others in addition to "the insured."

Similarly, in Plaintiff's other cited case, Paulucci v. Liberty Mut. Fire Ins. Co., 190 F. Supp.2d 1312 (M.D. Ga. 2002), the policy only permitted examination under oath of the named insured, not additional insureds. The Eleventh Circuit Court of Appeal has found that insurance policy provisions using the phrase "any insured" are not ambiguous and express "a contractual intent to create joint obligations." Michigan Millers Mut. Ins. Corp. v. Benfield, 140 F.3d 915 (11th Cir. Fla. 1998)(Unlike the phrase "any insured," the phrases "an insured" and "the insured" are ambiguous). In Michigan Millers, the Eleventh Circuit approved of the decision of the U.S. District Court for the Southern District of Florida in State Farm Fire & Cas. Co v. Kane, 715 F.Supp. 1558 (S.D. Fla. 1989), where the Court found that a policy provision referring to "any insured" is unambiguous and includes "all insureds," not just the "named insured." Therefore, QBE's policy permitting examinations under oath of "any insured" is unambiguous and creates joint obligations on the part of all insureds, and is not limited to the corporate named insured.

Plaintiff also argues that its failure to permit examinations under oath of additional insureds does not support Summary Judgment because four of the five people previously requested for examinations under oath ultimately "all gave depositions in this matter." However, the Court in <u>Goldman v. State Farm</u>, 660 So. 2d 300 (Fla. 4th DCA 1995), found that offering to submit to a deposition after the filing of the lawsuit did not satisfy the insurance policy requirements or rebut the presumption of prejudice to the insurer. The trial judge noted "there is a big difference between taking a sworn statement under the provisions of this contract and taking of a deposition. It's a horse of another color." <u>Id. at 302, n. 3</u>. The appellate court agreed, stating "We are unpersuaded that appellee's post-suit deposition of appellants obviated any prejudice to appellee" and "The policy does not provide that depositions may be substituted for examinations under oath." According to the Court in <u>Goldman</u>, "since the insurance policy clearly requires compliance with all of its requirements in order for appellants to bring this action, appellants' failure to comply with any one of the conditions as a matter of law would be sufficient grounds for upholding the lower court's order." <u>Id. at 305.</u>

Plaintiff also argues that when these unit owners were deposed in this case, they were "not able to add any new information." Although QBE acknowledges these unit owners claimed to have limited knowledge regarding many key issues in this case, they had significant knowledge regarding the damage or lack of damage to their own units. For example, Richard Turchen testified that he lost screens and a sunshade, but he had no damage to the frame of his screen enclosure. Mr. Turchen also testified that he had no water intrusion in his unit, no drywall damage, and no damage to his windows or sliding glass doors. Frank Levy testified regarding damage to his windows, sliding glass door, two of his unit walls and his popcorn ceiling texture, and the repairs that had been done in his unit. Further, during the depositions, it was learned that Richard Turchen and Frank Levy are not only unit owners, but are also still currently members of Plaintiff's governing Board of Directors. *See Plaintiff's Notices of Filing: (D.E.#47) p. 11, 20-25; (D.E.#48) p. 12-13, 16, 21-29, 42-43, 47-48; (D.E.#49) p. 11, 20-28, 40-42, 47-49; (D.E.#50) p. 36-39, 44, 51.*

### **Failure to Produce Documents**

In response to QBE's assertion that it is entitled to Summary Judgment because Plaintiff did not permit inspection of unit owner files until almost 29 months after the date of

QBE's initial request, Plaintiff argues that it could not produce the unit owners files pursuant to Florida Statutes Section 718.111(12).  F.S. 718.111(12)(c) allows for the inspection of "the official records of the association…by any association member or the authorized representative of such member at all reasonable times," but also provides that certain records such as sales records, medical records, and social security numbers, "not be accessible to unit owners."  Contrary to Plaintiff's argument, nothing in F.S. 718.111(12) prohibits Plaintiff from permitting inspection of the association records included in unit owner files by the property insurer, as the plain wording of the statute only makes these records inaccessible to unit owners, and Plaintiff presents no case law to support its argument.  In addition, QBE did not request inspection of medical records, sales records or social security numbers.

Further, Plaintiff does not dispute that it ultimately permitted inspection of the unit owner files in May 2008 through its third attorneys, Merlin Law Group.  Therefore, its actions in May 2008 are inconsistent with its present argument that it was prohibited by law from permitting inspection of the unit owner files.  Plaintiff also argues that QBE has not proven that the unit owner files contained relevant information.  However, in the Affidavit of Andrew Bertucci, QBE's adjuster states that unit owner files are reasonably expected to contain information regarding damage to individual units or complaints of damage to common areas, are typically found to contain information regarding the condition of the property, and often contain evidence of maintenance or repair problems, photographs of conditions, and documents regarding prior claims.  *See Affidavit of Bertucci (D.E.#42-1), paragraph 14*.  Plaintiff does not respond with any counter-affidavit contesting Mr. Bertucci's statement regarding the contents of unit owner files.

Plaintiff also contests QBE's assertion that its document production was limited, but fails to do so with any counter-affidavit.  Mr. Bertucci's Affidavit establishes that "Plaintiff's counsel forwarded limited additional documents on March 28, 2006" and "Plaintiff's counsel also revealed that additional unspecified documents were being withheld…"  *See D.E.#42-1, paragraph 15*.  If Plaintiff intended to oppose this assertion, Plaintiff was obligated to file a counter-affidavit.  Plaintiff's unsupported allegation does not establish a genuine issue of material fact regarding whether its document production was limited.

CASE NO.: 09-20047-CIV-GOLD/TURNOFF

Plaintiff states, with no affidavit or other evidentiary support, that "El Dorado disagrees with QBE's assertion that documents were intentionally withheld and prejudiced QBE from determining the amount of the loss" and "El Dorado substantially cooperated with QBE's investigation." Further, with no evidentiary support, Plaintiff alleges that Plaintiff's counsel "initially made an error stating on October 20, 2005, no meeting took place" and "After the mistake was discovered, the notes were turned over to QBE." Although Plaintiff filed an Affidavit of its President Murray Frank, nowhere in its Affidavit does Plaintiff establish that it produced any minutes for the October 20, 2005 meeting, which took place just five days prior to the hurricane. The Affidavit of Plaintiff's President also fails to attach any alleged "notes" of an October 20, 2005 meeting that were allegedly produced to QBE. To the contrary, however, the Affidavit of Bertucci establishes that "Plaintiff failed to produce any meeting minutes for October 2005" and that "those meeting minutes would be expected to contain information relevant and material to this insurance claim." *See D.E.#42-1, paragraph 26*. Plaintiff fails to rebut the Affidavit of Bertucci and, therefore, Plaintiff's failure to produce the minutes of its October 20, 2005 meeting are established as a matter of law for the purpose of this Motion for Summary Judgment.

Pursuant to Federal Rule of Civil Procedure 56(e), the non-moving party "may not rely merely on allegations or denials" in its Response, and "the court may permit an affidavit to be…opposed by depositions, answers to interrogatories, or additional affidavits." However, "unsworn statements…should not be considered in determining the propriety of a motion for summary judgment." See West v. Higgins, 2009 U.S. App. LEXIS 21057 (11th Cir. 2009). Plaintiff may not oppose QBE's factual statements in the Affidavit of Bertucci by merely making unsupported factual statements in its Response to the motion or to the Statement of Material Facts. The Court must accept as true all statements in the movant's affidavits which the non-movant fails to refute by counter-affidavit. See In re Royal Caribbean Cruises, Ltd., 403 F.Supp.2d 1168, 1173 (S.D. Fla. 2005); Opp v. Wheaton Van Lines, 231 F.3d 1060 (7th Cir. 2000); Patrick v. Wojdylo, *supra*; Curtis v. Bembenek, 48 F.3d 281, 287 (7th Cir. 1995).

Further, pursuant to the "adverse inference rule," "when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him." See Reno v. Kolcraft Enterprises, 2002 U.S. Dist.

LEXIS 28186 (S.D. Fla. 2002); Callahan v. Schultz, 783 F.2d 1543, 1545 (11th Cir. 1986); International Union v. NLRB, 459 F.2d 1329, 1336 (D.C. Cir. 1972); Interstate Circuit, Inc. v. U.S., 306 U.S. 208, 226, 59 S.Ct. 467, 83 L.Ed. 610 (1939)("the production of weak evidence when strong evidence is available can lead only to the conclusion that the strong would have been adverse"); U.S. v. Roberson, 233 F.2d 517, 519 (5th Cir. 1956)(unquestionably a party's failure to offer evidence within its ability to produce and which would explain or rebut an allegation by the opposing party may "raise a presumption that the evidence would not be favorable to his position"); Day & Zimmerman Services v. U.S., 38 Fed. Cl. 591 (Ct. Clms. 1997).  Therefore, Plaintiff's failure to produce the minutes of its meeting just five days before Hurricane Wilma gives rise to an inference that the minutes would contain information unfavorable to Plaintiff, and failure to produce those minutes constitutes a material breach of the insurance policy.

### Untimely Proof of Loss

In arguing that its failure to timely provide a Sworn Statement in Proof of Loss does not support Summary Judgment, Plaintiff argues that QBE has failed to produce evidence that it suffered any prejudice due to the untimely proof of loss.  Plaintiff contends that "to prevail on a lack of cooperation argument QBE must demonstrate prejudice."  However, the Florida court in Goldman held that no showing of prejudice by the insurer was necessary when the insured failed to comply with the policy conditions, which are deemed conditions precedent.  Unlike a breach of a general cooperation clause, when the insured breaches a specific policy condition such as the requirement of an examination under oath or sworn proof of loss, prejudice will be presumed.  Where prejudice is presumed, the burden shifts to Plaintiff to rebut that presumption.  See Goldman, 660 So.2d at 303-4; Coconut Key Assoc. v. Lexington Ins. Co., 649 F.Supp.2d 1363 (S.D. Fla. 2009)("Two commonly recognized conditions precedent in insurance policies are requirements that the insured (1) submit to an examination under oath and (2) submit a sworn proof of loss"); U.S.A. Electronics v. Aetna Cas. & Sur. Co., 120 B.R. 637, 646 (E.D.N.Y. 1990)("the submission of proofs of loss in accordance with the provisions of the policy is a condition precedent to recovery"); USF&G v. Wigginton, 964 F.2d 487 (5th Cir. 1992)(policy was rendered void by insured's failure to submit to examination under oath, regardless of whether insurer was prejudiced, as examination was condition precedent); Bolivar County

v. Forum Ins. Co., 779 F.2d 1081 (5th Cir. 1986)(no showing of prejudice necessary when provision breached by insured is condition precedent); Reliance Ins. Co. v. County Line Place, 692 F.Supp. 694 (S.D. Miss. 1988)(no showing of prejudice necessary as notice provision is condition precedent); Bankers Ins. Co. v. Macias, 475 So. 2d 1216 (Fla. 1985)(in cases involving breach of a condition precedent, burden is on the insured to show lack of prejudice).  Plaintiff fails to make any effort to rebut this presumption of prejudice.

Plaintiff also attempts to excuse its conduct by arguing that the policy does not specify that the proof of loss be submitted on a "required form" or any specific form.  However, contrary to Plaintiff's contention, the policy expressly states that the proof of loss must contain "the information we request" and "we will supply you with the **_necessary_** forms" *(emphasis added)*.  The term "necessary" is defined as "of an inevitable nature," "inescapable," "logically unavoidable," "compulsory," "absolutely needed" and "required." *See* Merriam-Webster's Online Dictionary, http://www.merriam-webster.com.  The term "necessary" does not mean "optional," "voluntary," or "non-essential."  As the proof of loss forms provided by the insurer are expressly described in the policy as the "necessary forms," the insured is required to utilize those forms and Plaintiff's argument is unfounded.

Further, even if Plaintiff was correct, Plaintiff failed to provide any proof of loss on any form for 14 months after QBE's request.  Plaintiff admits that it was required to provide a proof of loss within 60 days of the insurer's request and that it failed to do so.  In U.S.A. Electronics, Inc. v. Aetna Cas. & Sur. Co., *supra*, the Court granted an insurer's motion for summary judgment based upon the insured's failure to submit a sworn statement in proof of loss regarding one of its claims under its property insurance policy.  During what the Court termed its "Quest for Enlightenment," as permitted by the policy, Aetna requested that its insured submit sworn proofs of loss in support of its two property claims within 60 days of the request.  According to the Court, "It is well established that the failure to file sworn proofs of loss within sixty days of the demand therefor constitutes an absolute defense to an action on the insurance policy, absent a waiver of the requirement by the insurer or conduct on its part stopping its assertion of the defense."  Therefore, Plaintiff's failure to submit any sworn proof of loss for 14 months after QBE's request constitutes an absolute bar to this action, and warrants entry of Summary Judgment in favor of QBE.

CASE NO.: 09-20047-CIV-GOLD/TURNOFF

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via electronic filing on this 10th day of February, 2010, to: William F. Merlin, Jr., Esq., Merlin Law Group, P.A., 777 S. Harbour Island Blvd., Tampa, FL 33602; William S. Berk, Esq., Berk Merchant & Sims PLC, 2100 Ponce de Leon Blvd., PH1, Coral Gables, FL 33134, co-counsel for Defendant; and J.J. Wicker, II, Esq., Wicker, Smith, O'Hara, McCoy & Ford, P.A., 1645 Palm Beach Lakes Blvd, Suite 700, West Palm Beach, FL 33401, co-counsel for Defendant.

C. DEBORAH BAIN, P.A.
840 North Federal Highway
Suite 305
North Palm Beach, FL  33408
Phone 561-630-1917
Fax 561-630-1918

_____/s/ C. Deborah Bain_____
C. Deborah Bain, Esquire
Florida Bar No. 857637